**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 25 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CLATSOP RESIDENTS AGAINST
WALMART (CRAW), unincorporated
association; SARA MEYER,

        Plaintiffs-Appellants,

  v.

U.S. ARMY CORPS OF ENGINEERS, a
federal agency; SHAWN ZINSZER, in his
official capacity as Chief of the Corps
Portland District Regulatory Branch,

        Defendants-Appellees.

No. 16-35767

DC No. CV 15-737 MO

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, Chief Judge, Presiding

Argued and Submitted May 14, 2018
Portland, Oregon

Before: TASHIMA, McKEOWN, and PAEZ, Circuit Judges.

Plaintiff-Appellants Clatsop Residents Against WalMart and Sara Meyer

(collectively, "CRAW") appeal from the district court's grant of summary

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

judgment in favor of Defendant-Appellee the United States Army Corps of Engineers ("Corps").  CRAW alleged that the Corps acted arbitrarily and capriciously in approving Peaksview LLC's application for a wetlands fill permit under Section 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344(a), to fill .37 acres (or approximately 16,117 sq. ft.) of wetlands in Warrenton, Oregon. Peaksview later transferred the permit to Walmart.  We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

1.      CRAW first contests the sufficiency of the Corps' alternatives analysis.  The Section 404 Guidelines govern the Corps' evaluation of fill permit applications.  33 U.S.C. § 1344(b).  Under the Guidelines, the Corps may not issue a fill permit "if there is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem[.]"  40 C.F.R. § 230.10(a).  The National Environmental Policy Act ("NEPA") also requires the Corps to include "a brief discussion[] . . . of alternatives" in an environmental assessment ("EA"), "a concise public document" that the Corps prepares to determine whether a project will "significantly affect[] the quality of the human environment[.]"  40 C.F.R. § 1508.9; 42 U.S.C. §§ 4332(C), (E).

CRAW's contention that the Corps had a legal obligation to conduct an "independent evaluation" of the information Peaksview submitted is unsupported.

2

One regulation CRAW cites applies only to the Corps' preparation of an environmental impact statement ("EIS"), 33 C.F.R. pt. 325 App. B § 8(f)(2), and no EIS was required to be prepared here. The other regulation, 40 C.F.R. § 1506.5(a), also applies only when an applicant submits "environmental information for possible use by the agency in preparing an [EIS.]" No regulation imposes a standalone requirement that the Corps independently evaluate an applicant's submissions when preparing an EA. Rather, the Corps is entitled to rely on the accuracy of the applicant's submissions. 33 C.F.R. pt. 325 App. A. Moreover, the agency "must recognize the different levels of effort that should be associated with varying degrees of impact and require or prepare commensurate documentation." 40 C.F.R. § 230.6(b).

Given that the fill permit at issue in this case relates to a .37-acre wetland, we have little difficulty concluding that the Corps adequately "consider[ed] a range of alternative sites for the project, and conclude[d] that there are no practicable alternative sites available[.]" *Friends of the Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 912 (9th Cir. 2018). The Corps asked Peaksview to "revise" its alternatives analysis and, in particular, to justify why the Nygaard property was not a suitable alternative. Because the Corps's analysis was "comprehensive, searching, and rational" in proportion to the wetland in question,

3

its evaluation of alternatives under the CWA and NEPA was not arbitrary and capricious. *Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs*, 524 F.3d 938, 955 (9th Cir. 2008).

**2.** CRAW also contends that the Corps' cumulative impacts analysis under NEPA was arbitrary and capricious. We disagree. The Corps "aggregat[ed] the cumulative effects of past projects into an environmental baseline," *Cascadia Wildlands v. Bureau of Indian Affairs*, 801 F.3d 1105, 1111 (9th Cir. 2015), which included "quantified [and] detailed information" about past impacts, *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 868 (9th Cir. 2005) (quoting *Neighbors of Cuddy Mountain v. U.S. Forest Serv.*, 137 F.3d 1372, 1379–80 (9th Cir. 1998)).

The Corps' choice of a five-year baseline range was not arbitrary and capricious because "NEPA does not impose a requirement that the [Corps] analyze impacts for any particular length of time" and the five-year range included the most significant past impact, the 14.9 acres fill of the Nygaard property. *Selkirk Conservation Alliance v. Forsgren*, 336 F.3d 944, 962 (9th Cir. 2003). The Corps also did not err in disregarding the wetlands acreage identified in Clatsop County's master plan as not "reasonably foreseeable," 40 C.F.R. § 1508.7, because the master plan does not include a timeline or identify any specific proposed projects.

4

*Envt'l Prot. Ctr. v. U.S. Forest Serv.*, 451 F.3d 1005, 1014 (9th Cir. 2006). At any rate, the Corps projected that fill permit authorizations would continue at the pace of four acres of affected wetlands per year. The Corps' cumulative impacts analysis was therefore not arbitrary and capricious under NEPA.

**3.**     Lastly, CRAW challenges the Corps' determination that issuing the Peaksview permit was not contrary to the public interest. The Corps balanced the "benefits which reasonably may be expected to accrue from the proposal . . . against its reasonably foreseeable detriments." 33 C.F.R. § 320.4(a)(1). The Corps considered the project's possible detrimental effect on small businesses, and in doing so was entitled to rely on local officials' zoning decisions and was not obligated to conduct its own economic analysis. 33 C.F.R. §§ 320.4(j), (q). The Corps' public interest review was therefore not arbitrary and capricious.

·  ●  ·

The judgment of the district court is **AFFIRMED**.